UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

ALPHONSO SONES, SR.,    )
            )
       Petitioner,  )   Case No. 1:07-cv-1114
            )
v.           )   Honorable Janet T. Neff
            )
THOMAS K. BELL,     )
            )   **REPORT AND RECOMMENDATION**
       Respondent. )
_____)

    This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a sentence of 22 to 36 years' imprisonment after a jury found him guilty of armed robbery, MICH. COMP. LAWS § 750.529. The Muskegon County Circuit Court imposed the sentence on October 10, 2003, finding that Petitioner was a third-felony offender. Petitioner appealed as of right to the Michigan Court of Appeals and later brought a collateral attack, both without success.

    On November 6, 2007, Petitioner filed this habeas corpus action. His *pro se* petition raises the following nine grounds for relief.

   I.  DEFENDANT WAS DENIED A FAIR TRIAL BY INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.

   II.  DEFENDANT IS ENTITLED TO RESENTENCING WHERE HIS SENTENCE IS DISPROPORTIONATE TO THE SEVERITY OF THE CRIME.

   III.  THE TRIAL COURT IMPROPERLY SCORED THE SENTENCING GUIDELINES.

IV.    DEFENDANT IS ENTITLED TO RELIEF BECAUSE HE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

V.    IF THE COURT FINDS THAT "CAUSE" PER MCR 6.508(d)(3)(a) HAS NOT BEEN ESTABLISHED, IT THEN MUST EXERCISE ITS DISCRETION UNDER MCL 770.1 AND DETERMINE IF RELIEF FROM JUDGMENT IS REQUIRED.

VI.    DEFENDANT'S CONVICTION IS CONTRARY TO THE GREAT WEIGHT OF THE EVIDENCE.

VII.    WHERE MERI HEKKEMA'S CONFRONTATION WITH DEFENDANT AT THE PRELIMINARY EXAMINATION WAS HIGHLY SUGGESTIVE AND WHERE HEKKEMA'S IN-COURT IDENTIFICATION AT TRIAL HAS NO INDEPENDENT BASIS, IT WAS PLAIN ERROR TO INTRODUCE THE IDENTIFICATION AT TRIAL; ALTERNATIVELY, DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS THE IDENTIFICATION, OR TO HAVE MOVED FOR A LINE-UP, AND THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT'S MOTION REQUESTING THE COURT TO TAKE JUDICIAL NOTICE OF THE UNRELIABILITY OF EYEWITNESS IDENTIFICATION.

VIII.    THE PROSECUTOR DENIED DEFENDANT A FAIR TRIAL BY FAILING TO DISCLOSE THE EXISTENCE OF A PRE-TRIAL IDENTIFICATION PROCEDURE AND THE PHOTOGRAPH USED TO IDENTIFY MR. SONES.

IX.    DID THE PROSECUTOR COMMIT PROSECUTORIAL MISCONDUCT WHEN HE SUGGESTED AND EXECUTED THE ALTERATIONS OF PEOPLE'S EXHIBITS 6 AND 7, MISLEADING THE JURY TO BELIEVE THE PHOTOGRAPHS WERE ONE OF THE SAME CRIME SCENE? AND DID TRIAL COUNSEL WILSON PROVIDE INEFFECTIVE ASSISTANCE WHEN HE ENTERED INTO AGREEMENT WITH ASSISTANT PROSECUTOR BADER AND DID CIRCUIT COURT JUDGE TIMOTHY G. HICKS COMMIT ABUSE OF DISCRETION WHEN HE ENTERED IN THAT SAME AGREEMENT WHICH DENIED DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW?

(Br. in Supp. of Pet., 10-11, docket #2).

Respondent has filed an answer, asserting that most of Petitioner's claims are barred by procedural default arising from his failure to raise them on direct appeal and that the remainder of the claims are meritless.

District Judge Janet T. Neff has referred this matter to me for review of the record and the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Habeas Corpus Proceedings. Upon review of the record, I conclude that Petitioner's claims are uniformly meritless and recommend that all claims be denied on their merits.

## I.    **Proposed Findings of Fact**

### A.    **Muskegon County Circuit Court Proceedings**

Two state-court prosecutions against Petitioner arose from two similar armed robberies that occurred in Muskegon County on August 26 and 29, 2002. In both instances, a middle-aged black man entered a convenience store/gas station and asked for a pack of Basic cigarettes. When the female clerk turned around to get the cigarettes, in each instance, the assailant grabbed the clerk and menaced her with a knife or screwdriver. The assailant had the clerk take money from the cash register and place it in a bag along with the cigarettes. The present case arose from the armed robbery that occurred on August 29, 2002, at approximately 8:30 p.m. at an Admiral gas station in the City of Muskegon. The victim was Meri Hekkema.

At about three o'clock in the morning of the next day, an officer saw Petitioner, who met the description of the assailant, walking in the area of Apple and Fort Streets in Muskegon. Petitioner was intoxicated and had no identification on his person. He did, however, have Basic menthol 100s, the type of cigarette involved in each robbery. Petitioner was taken to the police station and questioned. He was placed in a line-up and was picked out by Ms. Hekkema, as well as

the two victims of the gas station robbery that had occurred three days earlier. (Prelim. Exam. Tr., 4-5, docket #10.)

Petitioner was charged with armed robbery in two separate cases.[1] Petitioner and his counsel appeared before the state district court for a preliminary examination on September 16, 2002. The only witness to testify was Meri Hekkema, who recounted the events of August 29, 2002. The witness identified Petitioner as her assailant. (Prelim. Exam. Tr., 5 , docket #10). No other witnesses were called. The district judge bound Petitioner over for further proceedings before the circuit court.

The only pretrial motion filed in the circuit court involved defense counsel's request that the court take judicial notice of the inherent unreliability of eyewitness identification and instruct the jury accordingly. Circuit Judge Timothy G. Hicks heard the motion on February 10, 2003. (*See* 2/3/03 Mot. Hr'g Tr., docket #12). Defense counsel relied upon a 30-year-old decision of the Michigan Supreme Court, *People v. Anderson*, 205 N.W.2d 461 (Mich. 1973), in which the court discussed factors contributing to misidentification by eyewitnesses. After hearing argument, the court determined that the issue was not appropriate for judicial notice and that the standard jury instructions adequately alerted the jury to the factors relevant to assessing the reliability of eyewitness testimony. Petitioner renewed the argument at trial, and the court again refused to give a jury instruction based on *Anderson*, 205 N.W.2d 461. (Tr. II, 194-95.)

---

[1] The October 26, 2002 robbery of the Shell station resulted in a conviction. Petitioner is serving a concurrent sentence of 22 to 36 years on that conviction, which was the subject of a separate habeas corpus petition. *See Sones v. Bell*, Case No. 1:07-cv-552 (W.D. Mich.). Judge Neff denied relief on June 14, 2010, and the case is now on appeal.

Trial commenced on September 9, 2003. During the *voir dire* process, the court declared a mistrial at the request of defense counsel, finding that the answers given by one juror tainted the proceedings. (*See* Mistrial Tr., docket #13).

The next day, September 10, 2003, a new jury was seated and trial commenced.[2] During opening statement, defense counsel attempted to discuss the unreliability of eyewitness testimony and to read to the jury from *Anderson*, 205 N.W.2d 461. Ruling on the prosecutor's objection, the court struck the reference and advised the jury that they would be instructed on the law by the judge at the end of the case, and they would not receive separate instructions from the attorneys. (Tr. I, 132.)

Meri Hekkema testified at trial in a manner consistent with her testimony at the preliminary examnation. According to Ms. Hekkema, a man entered the convenience store at approximately 8:30 p.m. on August 29, 2002, wearing a white shirt, black pants and black shoes. (Tr. I, 143-44.) The man asked for Basic Menthol 100 cigarettes. She told him that she only had Basic Menthol Kings, and she turned to get the cigarettes. As she turned back, the man grabbed her hand and held up a screwdriver. The man told Ms. Hekkema to open the register and to hurry. (Tr. I, 144-45.) She immediately dropped down behind the counter, opening the register as she did so. The robber took approximately $419.00 in bills from the till. He asked for a bag. She put the cigarettes in the bag and handed it to him. He added the money to the bag and left the store. (Tr. I, 146.) Ms. Hekkema immediately locked the door and called the police. (Tr. I, 147.) After the police arrived, the store videotape was played in her presence, but she did not watch much of it because she was in shock and very frightened. (Tr. I, 147-48.) The day after the robbery, Ms.

[2] The trial transcript is identified in this court's record as docket numbers 14 (Tr. I) and 15 (Tr. II).

Hekkema attended a live lineup at the police station, where she identified participant number four as the man who robbed her. (Tr. I, 148.) Ms. Hekkema testified that she and the other people attending the lineup did not talk to one another, as instructed. (Tr. I, 168-69.) A couple of weeks later, she attended a court proceeding at which she identified the same person. She then identified Petitioner as that person. (Tr. I, 149) According to Ms. Hekkema, between the time of the lineup and the first court proceeding, Petitioner shaved his beard. Between the first court proceeding and trial, Petitioner shaved his head. (Tr. I, 150.) The store videotape was played for the jury. (Tr. I, 151-57.)

Muskegon police officer Tim Lewkowski worked the evening shift on August 29th to August 30th. (Tr. I, 174 -75.) He was informed about the robbery, and he had a photograph of the robber that was taken from the videotape. At about 3:15 a.m., he saw a man walking on Apple Avenue who was wearing the clothing described in the police notification and looked like the man in the picture. (Tr. I, 175.) Lewkowski stopped his vehicle and made contact with the man, who was Petitioner. (Tr. I, 175.) Petitioner told Lewkowski his name, agreed to accompany Lewkowski to the police station, and consented to Lewkowski patting him down. Lewkowski found no weapon, but found Basic Menthol 100 cigarettes, $23.48 in cash, and a white, folded-up, Sav-A-Lot plastic bag. (Tr. I, 176-77.)

The prosecution also introduced the testimony of Quianna Carter and Leeandrew DeVette. Both testified to being at the Shell Mart at 275 West Muskegon on August 26, 2002 at 3:30 p.m. (Tr. II, 198, 219.) A man entered the store and asked Ms. Carter for a carton of Basic Menthol 100's. Ms. Carter did not have a carton, so she called Mr. DeVette from the back room to help her lower the cigarette rack so that they could get ten packs of cigarettes to make a carton. (Tr.

II, 199-200, 220-21.) As Mr. DeVette dropped the rack, the man came behind the counter holding a knife. The man forced Ms. Carter into the corner and told Mr. DeVette to give him the money and a bag. Everytime Mr. DeVette reached for a bag, the man swung his knife. Eventually, the two employees simply gave the man the entire cash-drawer tray. (Tr. II, 200, 222-23.) Telling them not to move, the man took the tray and backed up. He grabbed a couple of packs of cigarettes off the counter and left the store. (Tr. II, 201, 224.) Ms. Carter then called the police, and Mr. DeVette looked out the window to see which way the robber went. When the police arrived, the two employees described the man and told the police the direction in which the robber ran. (Tr. II, 201, 224-25.) The store had a video surveillance system and a videotape of the robbery was recorded. (Tr. II, 201.) The videotape was played for the jury. (Tr. II, 202-04.) Four days after the robbery, Ms. Carter and Mr. DeVette attended a live line-up at the police department. They both identified individual number four as the robber. (Tr. II, 205, 227.) At trial, they also both identified Petitioner as the person they had identified in the lineup. (Tr. II, 206, 225-27.) Ms. Carter testified that, since the lineup, Petitioner had shaved his head and facial hair, and his weight was different. (Tr. II, 206.) Mr. DeVette identified a frame from the store videotape showing a bald spot on the robber's head. (Tr. II, 226.) Immediately after Ms. Carter testified and before Mr. DeVette testified, the court instructed the jury that Carter and DeVette's testimony about another robbery was to be considered for the sole purpose of determining whether it tended to show that Petitioner used a common plan or scheme, not to determine that Petitioner was a bad person, was guilty of another offense, or was more likely to commit crimes. (Tr. II, 216-17.)

Muskegon police detective Gerald Ziegler testified that he interviewed Petitioner about the robbery at the Admiral station. Petitioner repeatedly claimed that Detective Ziegler had

the wrong man.  (Tr. II, 241-43, 253.)  Petitioner stated that he had been drunk and did not recall

where he had been at the time of the robbery.  (Tr. II, 253.)  Petitioner told Detective Ziegler that he

had not had a job for three or four months and supported himself on help from his girlfriend and his

daughter and by picking up bottles on the street.  (Tr. II, 254.)  Outside the presence of the jury, the

prosecutor moved to admit 13 seconds of videotaped evidence from the prior trial showing that

Petitioner had been asked to show the top of his head, revealing the bald spot seen on the store video

and described by a number of witnesses.  Following argument and viewing of the videotape, the

court allowed the evidence, on the theory that Petitioner was aware he might be asked to show his

head again.  The court instructed the jury that the videotape could be used only to demonstrate that

Petitioner had changed his appearance by shaving his head before the current proceeding.  (Tr. II,

256-75.)  After the videotape was played, Ziegler testified that he had been present when the

videotape was made.  At that proceeding, identification also was in issue.  (Tr. II, 278.)

At the conclusion of trial, on February 13, 2003, the jury found Petitioner guilty of

armed robbery.  (Tr. II, 343-44.)  On October 10, 2003, Petitioner was sentenced as a third habitual

offender to a prison term of 22 to 36 years.  (Sentencing Transcript, (S. Tr.), 10, docket #16.)

### B.    Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals.  His brief, which

was filed by counsel on May 25, 2004, raised three issues:

I.     DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING
       DEFENDANT'S MOTION REQUESTING THE COURT TO TAKE
       JUDICIAL NOTICE OF THE UNRELIABILITY OF EYEWITNESS
       IDENTIFICATION?

II.    WAS DEFENDANT DEPRIVED OF EFFECTIVE ASSISTANCE OF
       COUNSEL BY HIS ATTORNEY'S FAILURE TO OBJECT TO, AND

REQUEST A CURATIVE INSTRUCTION ON, PLAINTIFF'S CLOSING ARGUMENT THAT WITNESS HEKKEMA WAS LIKELY TO MAKE A CORRECT IDENTIFICATION BECAUSE THE ROBBERY WAS A "LIFE-THREATENING" EVENT?

III.     DID THE TRIAL COURT ERR BY SUSTAINING PLAINTIFF'S OBJECTION TO DEFENDANT'S ARGUMENT THAT, BASED ON RECENT DEVELOPMENTS INVOVLVING [SIC] DNA IDENTIFICATION, EYEWITNESS IDENTIFICATION IS SUSPECT LEADING TO MANY WRONGFUL CONVICTIONS?

(Def.-Appellant's Br. on Appeal, docket #17.)   By unpublished opinion issued March 1, 2005, the Michigan Court of Appeals rejected all appellate arguments and affirmed Petitioner's conviction and sentence.  (*See* 3/1/05 Mich. Ct. App. Opinion (MCOA Op.), docket #17.)

Petitioner sought leave to appeal to the Michigan Supreme Court.  Petitioner raised the same three claims raised before and rejected by the Michigan Court of Appeals.  By order entered August 30, 2005, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (*See* Mich. Ord., docket #18.)

**C.     Post-conviction relief**

On November 16, 2006, Petitioner filed a motion for relief from judgment in the Muskegon County Circuit Court, raising seven of the nine issues he raises in his petition for habeas relief.  The circuit court issued an opinion and order denying the motion on December 29, 2006. (*See* 12/29/06 Cir. Ct. Ord., docket #19.)

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising all nine issues presented in his habeas application.  On June 12, 2007, the court of appeals denied leave to appeal for failure to meet the burden of establishing entitlement to relief under MICH.

C⊤. R. 6.508(D).  (*See* 6/12/07 MCOA Ord., docket #19.)  The Michigan Supreme Court denied

leave to appeal for the same reason on May 30, 2007.  (10/29/07 Mich. Ord., docket #20.)

## II.     Proposed Conclusions of Law

### A.     Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, P⊔B.

L. 104-132, 110 S⊤A⊤. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has

"drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.

2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant

to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits

in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

A decision of the state court may only be overturned if (1) it applies a rule that

contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are

materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent

but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply or unreasonably

refuses to extend a principle to a context where it should apply.  *Bailey*, 271 F.3d at 655 (citing

*Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### B. Procedural Default

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

Here, the Muskegon County Circuit Court, the Michigan Court of Appeals and the Michigan Supreme Court all expressly stated that they denied relief on Petitioner's motion for relief from judgment on the basis that Petitioner failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D). Because MICH. CT. R. 6.508(D) was enacted in 1989 and

Petitioner's conviction and appeals took place well after, MICH. CT. R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000); *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998).

As a result, with the exception of his fourth habeas ground, which alleges the ineffective assistance of appellate counsel,[3] and a portion of his seventh habeas ground, which involves the eyewitness identification issues, all of Petitioner's claims appear to be procedurally defaulted because they were raised for the first time in Petitioner's motion for relief from judgment. Petitioner contends, however, that ineffective assistance of appellate counsel constitutes cause excusing his default of the remaining claims.

The Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the

---

[3] In *Guilmette v. Howes*, ___ F.3d ___, 2010 WL 4117281, at *4 (6th Cir. Oct. 21, 2010), the Sixth Circuit held that a claim of ineffective assistance of appellate counsel may not properly be deemed procedurally defaulted under MICH. CT. R. 6.508(D) when it is raised for the first time in a motion for relief from judgment under MICH. CT. R. 6.502. The court reasoned that "[t]he procedural-default rule stated by Rule 6.508(D)(3) applies only to claims that could have been brought on direct appeal, and thus – by necessity – it does not apply to claims of ineffective assistance of appellate counsel." The *Guilmette* court therefore found that the invocation of Rule 6.508(D) in such circumstances must be considered a decision on the merits of the claim.

procedural default issue raises more questions than the claims on the merits, the court may proceed directly to the merits and deny relief, despite any procedural default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

### C.     Ground I:  Ineffective Assistance of Trial Counsel

In his first ground for habeas relief, Petitioner argues that he was denied a fair trial by counsel's ineffective assistance.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

1.    <u>Failure to investigate</u>

Petitioner first argues that counsel was ineffective in failing to properly investigate his defense.  Specifically, he argues that counsel failed to call a witness who would have testified that Petitioner was at her home the entire day.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004).  A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas

corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59 (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

In *Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004), the Sixth Circuit considered a claim that an attorney had failed adequately to investigate an alibi defense. *Id.* at 570-71. The

court considered a situation in which the attorney was aware of some evidence in support of the defense but allegedly failed to conduct further investigation to find additional witnesses. The court concluded that an attorney's "failure to call a known alibi witness generally would constitute ineffective assistance of counsel." *Id.* at 570; *see also Blackburn*, 828 F.2d at 1183 (failure to investigate a known and important alibi witness constituted ineffective assistance of counsel). The question at issue in *Bigelow* was whether the facts supported such a claim. The court concluded that the petitioner had failed to overcome the presumption of correctness that attached to the state court's finding that the attorney was unaware of the existence of certain alibi witnesses. The court remanded the case for determination with respect to the petitioner's claim regarding other witnesses, which the state court had failed to address. *Id.* at 571.

Here, Petitioner has failed develop his claim either in this court or in the state courts. He does not identify who the witness is or what the witness would say. Nor does he allege that he informed defense counsel of the witness and the alibi defense before trial. Counsel could not be expected to investigate a defense or a witness unknown to him. *See Bigelow*, 367 F.3d at 571. Petitioner's allegations therefore do not undermine the strong presumption that counsel's performance was reasonable. *Strickland*, 466 U.S. at 689.

In addition, Petitioner is not entitled to an evidentiary hearing to develop his claim for two reasons. First, in the state-court proceedings, Petitioner failed to allege facts that would warrant an evidentiary hearing, and the state court therefore denied his request for a hearing. Petitioner therefore has failed to demonstrate the necessary diligence required to obtain an evidentiary hearing in this Court. *See* 28 U.S.C. § 2254(e)(2). Second, Petitioner's current representations fall far short of the sort of evidence sufficient to support his claim. *See* 28 U.S.C.

§ 2254(e)(2)(B) (barring an evidentiary hearing unless "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense). For both reasons, he is not entitled to an evidentiary hearing.

### 2. Failure to challenge admission of statement

Petitioner next argues that his attorney was ineffective in failing to move to suppress Petitioner's statement to police officers and in failing to object to the authenticity of the statement at trial. Petitioner's arguments are without merit.

At trial, Detective Ziegler unequivocally testified that he advised Petitioner of his rights and that Petitioner indicated that he understood those rights. (Tr. II, 242.) Although Petitioner argues that counsel should have sought a suppression hearing, he never expressly denies that he was read his *Miranda*[4] warnings before he was questioned by police officers. Instead, Petitioner merely states that no signed statement supports Detective Ziegler's testimony. Such representations fall far short of the evidence necessary to support his assertion that counsel's failure to move to suppress amounted to constituted constitutionally deficient attorney performance. *See* 28 U.S.C. § 2254(e)(2)(B). Petitioner therefore fails to overcome the strong presumption that counsel acted reasonably in deciding not to file a motion to suppress.

To the extent that Petitioner argues that counsel should have objected at trial to Detective Ziegler's testimony about his statements on evidentiary grounds, Petitioner's own statement clearly was admissible at trial. *See* MICH. R. EVID. 801(d)(2) (a party's admission is not hearsay and is admissible at trial). Because admission of the statement was proper, counsel

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

committed no error in failing to object. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) (counsel not ineffective for failing to make a frivolous objection); *see also O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

I therefore recommend that Petitioner's claims of ineffective assistance of counsel be denied.[5]

### D.        Ground II:  Disproportionate Sentence

In his second ground for habeas relief, Petitioner contends that he is entitled to resentencing because his sentence was disproportionate to the severity of the crime under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990). Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).   A federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

---

[5] Petitioner's independent claim of ineffective assistance of trial counsel is limited to the two issues discussed in this section.  However, within the other grounds for relief, Petitioner has argued that counsel was ineffective in failing to raise a particular claim.  I will address each of Petitioner's other arguments about the effectiveness of counsel within the context of the claims in which they are raised.

### E.    Ground III:  Improper Scoring of Sentencing Guidelines

In his third ground for habeas relief, Petitioner argues that the trial court erred in scoring the sentencing guidelines.  Petitioner argues that he improperly was assessed 20 points under Prior Record Variable (PRV) 5 for criminal conduct that included prior misdemeanors.  *See* MICH. COMP. LAWS § 777.55(1) (sentencing guideline for scoring prior misdemeanor and misdemeanor juvenile history).  He also argues that he was improperly scored 25 points for Offense Variable (OV) 13 for three crimes against a person within a five-year period.  *See* MICH. COMP. LAWS § 777.43(1) (sentencing guideline for scoring a continuing pattern of criminal behavior).

There is no constitutional right to individualized sentencing in non-capital cases. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (in a case holding that mitigating factors must be fully considered in death penalty cases, the Court "recognize[d] that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes.").  Since Petitioner has no federal right to an individualized sentence, this ground presents an issue of state law only.  Petitioner has not alleged grounds for the Court to conclude that this is one of those rare instances where an alleged state-law sentencing error was so egregious that it led to a fundamentally unfair outcome.  *See Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citing *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003)).

To the extent Petitioner argues that counsel was ineffective at sentencing for failing to argue the scoring issues under state law, Petitioner cannot demonstrate that counsel's performance was unreasonable or that any deficiency was prejudicial.  At sentencing, defense counsel argued the scoring of OV 1, but he did not argue the merits of PRV 5 or OV 13.  However, Petitioner previously

had been represented by the same attorney and had been sentenced by the same judge for a nearly identical armed robbery committed three days before the one in issue here. At the earlier sentencing, defense counsel vigorously argued against the prosecutor's recommendation that pending offenses be used to score OV 13 at 25 points. *See Sones v. Bell*, No. 1:07-cv-552 (W.D. Mich.) (S. Tr., 8-9, docket #16.) Counsel also had asked the court to consider Petitioner's age and that fact that, under any sentence, he was not likely to be of an age at the time of his release to pose a threat to the community. The trial court carefully considered the arguments, but ultimately agreed with the prosecutor. (*Id.*, S. Tr., 12.) It was not unreasonable for counsel to conclude that further argument about the scoring of those variables would be fruitless. Moreover, no basis exists for believing that the judge would come to a different conclusion about the proper scoring of the variables in this case. Indeed, the court imposed an identical sentence in this case as in the other armed robbery case. As a result, Petitioner fails to show either that counsel's performance was deficient or that he was prejudiced by counsel's representation. He therefore fails to establish either prong of the *Strickland* standard.

### F.     Ground VI:  Weight of the Evidence

In Ground VI of his habeas application, Petitioner argues that his conviction was against the great weight of the evidence. He therefore contends that he is entitled to a new trial under MICH. CT. R. 6.431.

Petitioner fails to raise a federal issue cognizable on habeas review. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Bradshaw*, 546 U.S. at 76; *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Estelle*, 502 U.S. at 67 (quoting *Lewis v.*

*Jeffers*, 497 U.S. 764, 780 (1990)). The contention that a verdict is against the great weight of the evidence is a state-law argument directed to a defendant's right to a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 133 n.8 (Mich. 1998); *People v. Herbert*, 511 N.W.2d 654, 658 (Mich. 1993). Consequently, a state prisoner's claim that he is entitled to a new trial because the jury verdict was against the great weight of the evidence is a state-law claim not cognizable on federal habeas review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004) (federal courts have "no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence").

The appropriate inquiry for purposes of federal habeas corpus is not whether the verdict was against the great weight of the evidence or whether the verdict has resulted in a miscarriage of justice, but whether sufficient evidence was presented to support the conviction. Petitioner, however, has never challenged the sufficiency of the evidence. Nor could a sufficiency claim be sustained. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine

-21-

the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988). Here, Ms. Hekkema gave eyewitness testimony that Petitioner was the person who robbed her. In addition, Ms. Carter and Mr. DeVette identified Petitioner as the perpetrator of a nearly identical robbery. Further, the in-store video, while not of perfect clarity, showed a man committing the robbery who looked like Petitioner. Such evidence is more than sufficient to support the jury's finding that Petitioner committed armed robbery.

Accordingly, Petitioner's sixth ground for habeas relief is both non-cognizable or without merit.

### G. Ground VII: Identification

Petitioner argues that Ms. Hekkema's identification of him at trial should have been suppressed because her identification of him at the preliminary examination was highly suggestive. He also argues that the trial court erred in refusing to take judicial notice of the unreliability of eyewitness identification and refusing to instruct the jury based on those noticed facts. He further argues that defense counsel was ineffective in failing to move to suppress the identifications at the lineup.

#### 1. Suggestiveness of identifications

When reviewing a petitioner's claim that a suggestive identification violated his or her due process rights, a court's primary concern is with the reliability of the evidence. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The reviewing court engages in a two-part inquiry. *Wilson v. Mitchell*, 250 F.3d 388, 397-99 (6th Cir. 2001). "First, the court evaluates the undue

suggestiveness of the pre-identification encounters." *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986). Second, if the identification procedures are found to be unduly suggestive, the court turns to the central question; that is, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. *Wilson*, 250 F.3d at 397. Factors to be considered in evaluating the likelihood of misidentification "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972); *see also Wilson*, 250 F.3d at 397 (quoting *Biggers*, 409 U.S. at 199-200). In analyzing the suggestiveness of an identification, the court considers whether the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection. *See Wilson*, 250 F.3d at 297 (assuming without deciding that presentation to a witness of only two photographs, only one of which was a man with the same hairstyle, was unduly suggestive); *United States v. Russell*, 532 F.2d 1063, 1068 (6th Cir. 1976) (holding that an identification procedure was unduly suggestive because a witness identified the suspect by the process of elimination, with the police giving her another chance to make the identification after her first selection was not the person the police believed to be the guilty party).

　　　　In the present case, Petitioner presents no facts or argument tending to show that the preliminary examination or the earlier lineup was suggestive, and none is apparent on the record. Ms. Hekkema identified Petitioner without hesitation at the preliminary examination. (Prelim. Exam. Tr., 5.) Ms. Hekkema also testified that she had identified Petitioner with certainty at the lineup. (Tr. I, 148-49, 160-61, 166-70.) She testified that she took about 30 seconds to give her

answer at the lineup identification because she wanted to be very certain about her identification. (Tr. I, 171.) Ms. Hekkema repeatedly denied having spoken to any other witness before or after viewing the lineup. (Tr. I, 149, 160.) On cross-examination, defense counsel attempted to discredit her identification by emphasizing how the other participants in the lineup differed in appearance from Petitioner. But the differences on which he relied did not support a conclusion that the lineup was unduly suggestive. (Tr. I, 166-68.) In addition, an appointed defense attorney was present and viewed the lineup for suggestiveness prior to any witness being allowed to make an identification. The attorney did not suggest any changes. (Tr. II, 247-48.) In sum, Petitioner has failed to demonstrate that anything about the procedure at either the lineup or the preliminary examination was unduly suggestive. I therefore need not reach the issue of reliability.

Moreover, even were the Court to reach the question, nothing about the two pretrial identifications casts doubt on the reliability of the witness's testimony. *See Biggers*, 409 U.S. at 199-200. The first reliability factor is the length of time the witness had to observe the suspect during the pendency of the crime. *See Russell*, 532 F.2d at 1066 ("There is a great potential for misidentification when a witness identifies a stranger based solely upon a single brief observation, and this risk is increased when the observation was made at a time of stress or excitement."). In the present case, Ms. Hekkema had far more than a passing glance at Petitioner. She had nearly a minute of face-to-face interaction during which she could observe Petitioner from a couple of feet away. While Ms. Hekkema indicated that the circumstances of the robbery were stressful, the opportunity for observation weighs in favor of the reliability of her identification. Moreover, the description of the robber that Ms. Hekkema gave to the police was consistent with her eventual identification. (Tr. I, 162-64.) In addition, the next reliability consideration – Ms. Hekkema's level of certainty at the

time of her identification – weighs in favor of reliability. She confidently identified Petitioner at the lineup, at the preliminary examination, and at trial. Despite extensive cross-examination, she remained certain of her identification. Finally, only one day had elapsed between the robbery and the lineup identification. In sum, the *Biggers* considerations all weigh in favor of the reliability of Hekkema's identification.

Petitioner also suggests that counsel was ineffective for failing to suppress the identification. Because no basis existed for suppressing the identification, counsel acted reasonably in not moving to suppress. *See Smith*, 591 F.3d at 523.

2. Unreliability of eyewitness identifications

Petitioner argues that the trial court erred in failing to take judicial notice of the unreliability of eyewitness identifications. He also argues that the court erred in refusing to give special jury instructions about that unreliability. In support of his argument, Petitioner relies, as he did in the state courts, on certain Michigan cases. *See Anderson*, 205 N.W.2d 461; *People v. Carson (Carson I)*, 553 N.W.2d 1, 5 (Mich. Ct. App.), *vacated in other part by People v. Carson (Carson II)*, 560 N.W.2d 657 (1996). The Michigan Court of Appeals rejected Petitioner's claim, concluding that *People v. Cooper*, 601 N.W.2d 409 (Mich. Ct. App. 1999), squarely held that "*Anderson* does not require any special jury instruction regarding the manner in which a jury should treat eyewitness identification testimony." (7/15/04 MCOA Op. at 2, docket #18.)

Petitioner's claim that judicially noticed evidence should have been presented to the jury is based solely on state law. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th

Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). No federal constitutional authority requires that a state court take judicial notice of any matter, much less a matter as ambiguous as the reliability of eyewitness testimony. Petitioner's claim therefore fails to demonstrate fundamental injustice.

Similarly, with respect to Petitioner's claim that the jury should have been instructed with the language of the *Anderson* case, his claim also fails to implicate due process. Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review. Instead, Petitioner must show that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). *See also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000) (same). If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law. *Id.*

Here, Petitioner claims that the trial court was required to give a jury instruction based on facts that were not introduced at trial. I am not aware of any Supreme Court authority that requires a court to give an instruction that was not supported by trial evidence. *See Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). Moreover, the jury was instructed on the general considerations to be used in judging witness credibility. (*See* Tr. II, 327-29.) Petitioner therefore cannot show that the absence of the requested instruction rendered the trial fundamentally unfair. Accordingly, I recommend that Petitioner's seventh habeas ground be denied.

### H.    Grounds VIII:  Prosecutorial Misconduct

In his eighth ground for relief, Petitioner asserts that he was denied due process by the prosecutor's failure to disclose a photograph displayed to Ms. Hekkema at trial.  Petitioner argues that the prosecutor acted in bad faith by suppressing evidence and violating the discovery order, thereby preventing the defense from moving to suppress the identification.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id.* at 281 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 129 S. Ct. 1783 (2009).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682 (internal quotation omitted).

The basis for Petitioner's eighth ground for habeas relief is unclear.  Presumably, he refers to the prosecutor's use on direct examination of a picture of the lineup array and individual pictures of Petitioner taken from the store videotape.  Upon being shown the photographs, Ms. Hekkema confirmed that one was a picture of the lineup and the other was a picture of Petitioner. (Tr. I, 159-60.)   Subsequently, during cross-examination, defense counsel showed Ms. Hekkema

the same pictures. He used the picture of Petitioner taken at the lineup, suggesting that the picture was inconsistent with her description to the police. (Tr. I, 164-65.) He also showed Ms. Hekkema pictures of the participants in the lineup, suggesting that Ms. Hekkema's identification was unreliable because all of the other participants looked different from Petitioner. (Tr. I, 168-69.)

Petitioner appears to argue that, because photographs existed of the lineup, they indicate that a photo array was shown to the witnesses, a fact that was not revealed before trial. Petitioner's assumption is unreasonable. First, Ms. Hekkema denied having viewed pictures before or while she attended the lineup. (Tr. I, 160.) Second, nothing in the record suggests that a photographic array was ever shown to witnesses. Third, by the time of trial, defense counsel and Petitioner had both seen all of the pictures because they had been introduced at the earlier trial. As a result, no evidence supports Petitioner's claim that the prosecutor withheld any material, much less any material that was favorable to the accused. Petitioner therefore fails to demonstrate a due process violation.

I.      **Ground IX:  Introduction of Other-Acts Evidence**

In his ninth ground for relief, Petitioner argues that the prosecutor committed misconduct by offering two photographs taken from the first robbery as evidence in the case at trial. Petitioner also argues that defense counsel was ineffective in agreeing to the admission and that the trial court abused its discretion in admitting the pictures.

With respect to the first portion of his argument, Petitioner cannot demonstrate that the prosecutor committed misconduct by offering an exhibit that ultimately was admitted at trial. "'A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make

arguments in reliance on those rulings.'" *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 1999) (quoting *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008)).

To the extent that he complains that the trial court erred in admitting the evidence, his claim is not cognizable on habeas review. As the Supreme Court explained in *Estelle*, 502 U.S. 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings implicate due process only if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour*, 224 F.3d at 552; *Coleman*, 268 F.3d at 439. This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Petitioner has not met this difficult standard. First, Petitioner cites no Supreme Court authority suggesting that the use of the pictures was fundamentally unfair. Indeed, admission of evidence of uncharged crimes is generally held to implicate no constitutional issue. In *Lisenba v. California*, 314 U.S. 219 (1941), the Supreme Court held that the states are free under the Fourteenth Amendment to admit evidence of uncharged crimes in criminal cases when relevant to issues such as intent, design, or system. 314 U.S. at 227-28. More recently, in *Estelle*, 502 U.S. 62, the Court held that the admission of evidence of other bad acts can only be the basis for habeas corpus relief if it rendered the trial fundamentally unfair. *Id.* at 70. Petitioner fails to demonstrate that the

evidence of other acts rendered his trial fundamentally unfair. He therefore fails to raise a claim of constitutional dimension.

Second, the admission of the photographs was harmless. A federal court on habeas review must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). In the instant case, the evidence, which showed the bald spot on the robber's head, had only the slightest potential to have improperly influenced the jury. The pictures were taken from a short videotape that was introduced during Ms. Carter's testimony, prior to the identification of the pictures by Mr. DeVette. Petitioner has not objected to the introduction of the videotape. Moreover, immediately after showing the videotape and before questioning Mr. DeVette, the court carefully instructed the jury on the limited purposes for which the evidence could be used. (Tr. II, 217.) Petitioner fails to show any reason to believe that the jury disregarded those instructions. As a consequence, admission of the pictures was harmless.

Finally, to the extent that Petitioner claims that counsel was ineffective in stipulating to the admission, his claim also fails. As previously discussed, in order to establish a claim of ineffective assistance of counsel, Petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that counsel's performance resulted in actual prejudice. *See Strickland*, 466 U.S. at 689. Petitioner can meet neither prong of the *Strickland* standard. Although counsel did not object in this case to the admission of other-acts evidence under MICH. R. EVID. 404(b), he had raised that objection in the earlier trial involving the August 26, 2002 robbery. That case involved the same defense attorney, the same prosecutor, the same witnesses, the

same judge, and essentially the same conduct. Defense counsel's objection was rejected, and the evidence was introduced. Counsel reasonably could have decided that further objection in this case would be futile. An attorney may not be found to be ineffective for failing to make a frivolous objection. *See Smith*, 591 F.3d at 523; *O'Hara*, 499 F.3d at 506; *Chegwidden*, 92 Fed. Appx. at 311.

For the same reason, Petitioner cannot demonstrate the he was prejudiced by counsel's failure to object. Petitioner provides no basis for believing that the judge would have sustained an objection that he had previously rejected. Moreover, as previously discussed, the still photos showed nothing new. They were taken from a videotape that already had been introduced into evidence, to which Petitioner did not and does not object. Further, the jury was instructed to consider the evidence only as it applied to the question of whether Petitioner had a common scheme or plan, not whether he had the propensity to commit crimes. For all these reasons, Petitioner cannot show the necessary prejudice required by *Strickland*.

## J.    Grounds IV & V:  Entitlement to Merits Review

In his fourth habeas ground, Petitioner argues that his appellate attorney rendered ineffective assistance by failing to raise the issues presented in Petitioner's motion for relief from judgment, thereby depriving Petitioner with an opportunity for success on appeal. Petitioner's claim does not state an independent ground for relief. Instead, it purportedly establishes cause that would excuse Petitioner's procedural default of his belatedly raised issues. In Ground V, Petitioner contends that he is entitled to merits review of his claims under MICH. COMP. LAWS § 770.1 because justice has not been done. Inasmuch as I have addressed each independent ground for relief on the merits, Petitioner's arguments as to why he should receive merits review are moot. As a consequence, Grounds IV and V cannot serve as the basis for habeas relief.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Dated:   November 1, 2010                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).