UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALPHONSO SONES, SR.,

    Petitioner,                                 Case No. 1:07-cv-1114

v                                                     HON. JANET T. NEFF

THOMAS K. BELL,

    Respondent.

_____/

## OPINION

This is a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 arising out of Petitioner's conviction of armed robbery, MICH. COMP. LAWS § 750.529. The matter was referred to the Magistrate Judge, who issued a Report and Recommendation (R & R) on November 1, 2010, recommending that this Court deny the petition on the merits (R & R, Dkt 25). The matter is presently before the Court on Petitioner's objections to the Report and Recommendation (Pet. Obj., Dkt 26). In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b)(3), the Court has performed de novo consideration of those portions of the Report and Recommendation to which objections have been made. The Court denies the objections and issues this Opinion and Final Order. *See* RULES GOVERNING § 2254 CASES, Rule 11 (referring to the order disposing of a habeas petition as a "final order").[1]

---

[1]The conviction at issue here is for armed robbery of an Admiral station on August 29, 2002. Petitioner was also convicted of armed robbery of a Shell station on August 26, 2002. He was sentenced as a third habitual offender to a concurrent sentence of 22 to 36 years on that conviction, which was the subject of a separate habeas corpus petition. Relief was denied. *See Sones v. Bell*,

Petitioner raises seven objections to the Magistrate Judge's findings related to the following claims: (1) trial counsel was ineffective in failing to call an alibi witness; (2) Petitioner's sentence was disproportionate to the crime; (3) trial counsel was ineffective for failing to argue state law scoring issues; (4) Petitioner's conviction is against the great weight of the evidence; (5) eyewitness testimony identifying Petitioner as the robber was inadmissible, trial counsel was ineffective in failing to have the testimony suppressed, and the trial court erred in refusing to take judicial notice of, or give requested jury instructions about, the unreliability of eyewitness identification; (6) the prosecutor was guilty of misconduct for obtaining the witness's in-court identification of a photo of Petitioner; and (7) trial counsel was ineffective for failing to object to the admission of still photos of the suspect taken from another robbery.

### A. Ineffective Assistance of Trial Counsel

Petitioner's first objection is that the Magistrate Judge erred in denying Petitioner's claim that his trial counsel was ineffective in failing to call an alibi witness. Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to an evidentiary hearing because he "has failed to develop his claim either in this court or in the state courts" (Dkt 25 at 16). Petitioner cites *Williams v. Taylor*, 529 U.S. 420 (2000), in support of this argument.

In *Williams*, the Supreme Court held that a petitioner seeking an evidentiary hearing must show, at a minimum, that he "made a reasonable attempt, in light of the information available at the time, to investigate and pursue [his] claims in state court." *Williams*, 529 U.S. at 435. Here, the

---

No. 1:07-cv-552 (W.D. Mich. June 14, 2010). On appeal, the Sixth Circuit Court of Appeals denied Petitioner's motion for a certificate of appealability, finding that "jurists of reason could not disagree with the district court's resolution of Sones's claims." Order, *Sones v. Lafler,* No. 10-919 (6th Cir. June 8, 2011).

Magistrate Judge properly found that Petitioner had failed to develop his claim under this standard (Dkt 25 at 16). Petitioner did not raise his failure-to-investigate claim on appeal from his conviction, despite the fact that he made an ineffective assistance of counsel claim based on other grounds (*see* Dkt 25 at 8-9).[2] In addition, in both the state court proceedings and in his habeas petition, Petitioner failed to allege facts that would warrant an evidentiary hearing. As the Magistrate Judge properly noted, Petitioner failed to identify the alleged alibi witness, indicate what the witness would say, or "allege that [Petitioner] informed defense counsel of the witness and the alibi defense before trial" (Dkt 25 at 16).[3]

Petitioner does not dispute these findings, but instead attempts to cure these omissions in his objections to the Report and Recommendation by submitting new exhibits (Dkt 26, Ex. A & B). On November 18, 2010, with his objections, Petitioner submitted an affidavit from his ex-wife, dated

---

[2] To the extent that Petitioner argues that his default should be excused due to ineffective assistance of appellate counsel, his argument is without merit. In his post-judgment state court proceedings, the court found that Petitioner's appellate counsel had not been ineffective in failing to raise certain issues (which are the same issues raised in this proceeding) on direct appeal (Dkt 19, 12/29/06 Cir. Ct. Op. & Or.). This finding was later upheld by the Michigan Court of Appeals (Dkt 19, 6/12/07 MCOA Or.). Generally, findings with respect to ineffective assistance of counsel by state courts are overturned only if, as is provided by § 2254(d)(1), the state court's application of clearly established federal law is unreasonable under Supreme Court precedent. *See Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003). The Court finds no such circumstances here. Further, "[t]he standards created by *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter,* 562 U.S. ___, 131 S. Ct. 770, 788 (2011) (internal citations omitted).

[3] "The Supreme Court recently reemphasized AEDPA's important role as 'part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.'" *Smith v. Metrish,* No. 09–1327, 2011 WL 3805640, at *5 (6th Cir. Aug. 30, 2011) (unpublished opinion) (quoting *Harrington,* 131 S. Ct. at 787. "[A] 'state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.'" *Id.* (quoting *Harrington,* 131 S. Ct. at 786).

July 7, 2010, in which she states that Petitioner was with her at the time of the robbery, that he "was so drunk that he acted like he didn't even know where he was at," and that she left a message for Petitioner's trial counsel that she would testify to this effect, but that counsel never returned her call (*id.* Ex. A). Petitioner also submitted his own signed statement, dated November 12, 2010, indicating that he was with his ex-wife at the time of the robbery and that he informed his attorney about the alibi witness on the day of trial (*id.* Ex. B).

The Court is not persuaded that grounds exist for consideration of this new evidence (or an evidentiary hearing) on habeas review. The Supreme Court has recently made clear that § 2254(e)(2) "'imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing.'" *Sheppard v. Bagley,* ___ F.3d ___, No. 09–3472, 2011 WL 4031097, at *3 (6th Cir. Sept. 13, 2011) (quoting *Cullen v. Pinholster,* ___ U.S. ___, 131 S. Ct. 1388, 1400–01 (2011)). "'[F]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Id.* (quoting *Pinholster,* 131 S. Ct. at 1401). But even considering the belated affidavit and statement, Petitioner has not demonstrated that trial counsel's performance fell below an objectively reasonable standard or that the failure to introduce the alibi witness prejudiced him in a way that resulted in an unreliable or fundamentally unfair verdict. Taken together, Petitioner's ex-wife's affidavit and Petitioner's own statement that he informed trial counsel of the availability of the alibi testimony on the day of trial do not persuade the Court that potential grounds exist for habeas relief.

In light of the "heavy measure of deference" to be given to counsel's judgments, a decision not to call the alibi witness under the circumstances set forth in the recently submitted affidavit and statement falls "within the wide range of reasonable professional assistance." *See Strickland v.*

*Washington*, 466 U.S. 668, 689-691 (1984). Petitioner's case differs markedly from *Bigelow v. Haviland*, 576 F.3d 284 (6th Cir. 2009), on which he relies. In *Bigelow*, "everything turned on the alibi defense" and "the prosecution's ability to place Bigelow at the scene of the crime rested entirely on conflicting eyewitness testimony." *Id.* at 289. The evidence against Petitioner was based on positive eyewitness identification (Dkt 25 at 6). In addition, the jury viewed a videotape of the robbery and heard testimony that when police arrested Petitioner, he was wearing clothing that was described in the police notification; there was also evidence that Petitioner had committed a similar robbery three days earlier in which he was identified by two witnesses (*id.* at 6-7).

Petitioner has not met his burden to overcome the presumption that his counsel's conduct could have been sound trial strategy. *Strickland,* 466 U.S. at 689. Moreover, he has not met the *Strickland* requirement that, if his ex-wife had been called as an alibi witness there was "a reasonable probability that . . . the result of the proceeding would have been different." *Id.* at 694. For these reasons, the Court finds Petitioner's first objection without merit.

### B. Disproportionate Sentence

Next, Petitioner objects that the Magistrate Judge erred in finding that "Petitioner's claim based on *Milbourn*[4] is not cognizable in a habeas corpus action" (Dkt 25 at 18). In his complaint, Petitioner argued that "the trial court abused its discretion and imposed a disproportionate sentence for armed robbery" (Dkt 2 at 10). Petitioner supported his argument exclusively with state cases and statutes, relying on the Michigan Supreme Court's decision in *Milbourn* (Dkt 2 at 10-11). In his objection, Petitioner appears to be making a new argument, citing a portion of *Doyle v. Scutt*, 347 F. Supp. 2d 474 (E.D. Mich. 2004), in which the court states that "a federal court will not set aside

---

[4]*People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990).

… terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking." *Id.* at 485.

Because Petitioner's initial complaint did not raise the claim that his sentence was "so disproportionate to the crime as to be completely arbitrary and shocking," *id.,* the Magistrate Judge properly concluded that Petitioner's argument was a state-law claim outside of the scope of federal habeas review (Dkt 25 at 18) (citing 28 U.S.C. § 2254(a)). Since Petitioner asserts this constitutional argument for the first time at this stage of the case, his argument is deemed waived.[5]

Even if Petitioner had not waived this claim, it would be without merit. As the court in *Doyle* noted, "[a] sentence imposed within the statutory limits is not generally subject to habeas review." *Doyle*, 347 F. Supp. 2d at 485 (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). "[S]trict proportionality between a crime and its punishment is not required by the Eighth Amendment, and only an extreme disparity between the crime and the sentence offends the Eighth Amendment." *Doyle*, 347 F. Supp. 2d at 485 (citing *Harmelin v. Michigan*, 501 U.S. 957, 959-60 (1991) and *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). Here, as in *Doyle*,[6] Petitioner has failed to demonstrate that there is an extreme disparity between his sentence and the crime for which he was convicted. Petitioner was convicted of armed robbery (Dkt 25 at 5), which carries a

---

[5]The Sixth Circuit Court of Appeals has "indicated that a party's failure to raise an argument before the magistrate judge constitutes a waiver." *Glidden Co. v. Kinsella*, 386 Fed. App'x 535, 544 n.2 (6th Cir. July 15, 2010) (citing *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)); *see also United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998).

[6]In *Doyle*, the court denied habeas relief to a prisoner who objected that concurrent sentences of 20 to 40 years for armed robbery and conspiracy to commit armed robbery were grossly disproportionate to his crime. *Id.* at 477, 485-86.

maximum sentence of imprisonment for life, as the *Doyle* court noted, 347 F. Supp. 2d at 485. Given the seriousness of the crime and Petitioner's habitual offender status (Dkt 25 at 8), his sentence of 22 to 36 years' imprisonment is not grossly disproportionate to the crime. As such, Petitioner's sentence is not contrary to, or an unreasonable application of, federal constitutional law, and his objection is without merit.

### C. Improper Scoring of Sentencing Guidelines

Next, Petitioner disputes the accuracy of the Magistrate Judge's finding that Petitioner's counsel was not "ineffective at sentencing for failing to argue the scoring issues under state law" (Dkt 25 at 19). Specifically, Petitioner argues that because one of the crimes relied on in scoring Offense Variable (OV) 13 was dismissed prior to Petitioner's sentencing in the second armed robbery, the Magistrate Judge's conclusion was based on "the false premise that the facts had not changed" (Dkt 26 at 6-7).

Petitioner's objection is without merit. The Michigan statute governing scoring of OV 13 states that "all crimes within a 5-year period, including the sentencing offense, shall be counted *regardless of whether the offense resulted in a conviction.*" MICH. COMP. LAWS § 777.43(2)(a) (emphasis added). For this reason, the dismissal of a pending charge does not preclude its use in scoring. As the Magistrate Judge noted, "[a]t the earlier sentencing, defense counsel vigorously argued against the prosecutor's recommendation that pending offenses be used to score OV 13 at 25 points" and "the *same* judge" rejected counsel's argument and "imposed an identical sentence in this case as in the other armed robbery case" (Dkt 25 at 20). The dismissed charge is one of the charges pending at the time of the first sentencing and was dismissed as a direct result of his convictions (*see* Dkt 26, Ex. C). Based on these facts, the Magistrate Judge properly found that "[i]t

was not unreasonable for counsel to conclude that further argument about the scoring of those variables would be fruitless" and that "Petitioner fail[ed] to show either that counsel's performance was deficient or that he was prejudiced by counsel's representation" (Dkt 25 at 20).

### D. Weight of the Evidence

Petitioner's next argument is that the Magistrate Judge erred in holding that "[t]he contention that a verdict is against the great weight of the evidence is a state-law argument directed to a defendant's right to a new trial" (Dkt 25 at 21). Petitioner notes that a habeas corpus claim may be supported in cases where "the record is so devoid of evidentiary support that a due process issue is raised" (Dkt 26 at 8) (citing *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004)). Petitioner contends not only that a lack of evidence supports a due process claim in this case, but that the Magistrate Judge further erred in finding that the "'evidence is more than sufficient to support the jury's finding that Petitioner committed armed robbery'" (Dkt 26 at 9) (quoting Dkt 25 at 22).

Specifically, Petitioner's assertions are as follows: (1) the witness's identifications of Petitioner resulted from a suggestive lineup and preliminary examination identification, (2) the evidence that Petitioner committed a similar robbery was inadmissible as character evidence and, therefore, insufficient to sustain a conviction, (3) the Magistrate Judge did not know Petitioner and cannot know whether the man in the video looked like Petitioner, and (4) two officers testified at trial that the man in the video looked like someone else, so a finding that the man in the video looked like Petitioner "is not supported by the evidence at trial" (Dkt 26 at 8-9).

In reviewing the sufficiency of the evidence, the Court may consider all of the evidence presented at trial, whether or not the evidence was properly admissible. *See United States v. Quinn*,

8

901 F.2d 522, 530-31 (6th Cir. 1990) (citing *Lockhart v. Nelson*, 488 U.S. 33 (1988)). As a result, the witness's identification of Petitioner was properly considered in the Magistrate Judge's analysis, as was evidence of Petitioner's involvement in the earlier similar robbery[7] (Dkt 25 at 22). Petitioner's objections to the Magistrate Judge's reliance on the videotape are similarly misplaced. Judicial review of the sufficiency of the evidence "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)(emphasis added)). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

As the Magistrate Judge properly noted, "[i]ssues of credibility may not be reviewed by the habeas court under this standard" (Dkt 25 at 21) (citing *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993)). The jury was properly permitted to view the videotape and consider for themselves whether Petitioner resembled the man in the video (Dkt 25 at 6). As Petitioner's objection acknowledges, the jury also heard testimony that the man in the videotape resembled another man, not Petitioner (Dkt 26 at 9). The jury was free to assess the credibility of this testimony, and a review of witness credibility is beyond the scope of habeas review. *See Herrera*, 506 U.S. at 401-02. The record is clearly not "so devoid of evidentiary support that a due process issue is raised." *Cukaj*, 305 F. Supp. 2d at 796.

---

[7]As Petitioner himself acknowledges, the evidence of Petitioner's involvement in the earlier robbery, while not admissible as character evidence, is admissible for other purposes, including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material …." MICH. R. EVID. 404(b).

9

### E. Identification

Petitioner next objects to several of the Magistrate Judge's findings related to the admissibility of eyewitness testimony identifying Petitioner as the perpetrator.

1. *Suggestiveness of Identifications*

Petitioner first argues for the suppression of the witness's identification of him on the grounds that it was the product of a suggestive lineup and preliminary examination identifications (Dkt 26 at 9-13). As to the lineup, Petitioner points to differences between the witness's initial description of the suspect and the physical attributes of the other lineup participants and asserts that the witness "went so far as to testify that no one other than [Petitioner] even vaguely resembled the person that robbed her" (Dkt 26 at 10). Petitioner also argues that, because the defense attorney present at the lineup was not Petitioner's own defense attorney and did not request any changes to the lineup, Petitioner was denied effective assistance of counsel under *United States v. Wade*, 388 U.S. 218 (1967) (Dkt 26 at 11-12).

As the Magistrate Judge noted, a court analyzes the suggestiveness of an identification by considering whether the witness was steered to one participant or another by the process itself (Dkt 25 at 23) (citing *Wilson v. Mitchell*, 250 F.3d 388 (6th Cir. 2001)). The physical differences Petitioner points to in this case are minor[8] and do not render the lineup impermissibly suggestive.

Further, Petitioner's argument that his own defense counsel was required to be present at the

---

[8]Petitioner describes differences in the length of hair and the amount or presence of facial hair and asserts that one participant was heavy set, while the suspect was described as being of medium build (*see* Dkt 26 at 10-11). By contrast, in the case cited by Petitioner, *Haliym v. Mitchell*, 492 F.3d 680 (6th Cir. 2007), a lineup was found to be impermissibly suggestive when the defendant was the only participant in the lineup who was bandaged and wearing prison clothing. *Id.* at 704. *See also Jells v. Mitchell*, 538 F.3d 478, 511-12 (6th Cir. 2008) (defendant was "by far the youngest" participant and wore a jail jumpsuit, while other participants wore street clothes).

lineup is without merit. In *Wade*, the Supreme Court noted that the use of substitute counsel "may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage …." *Wade*, 388 U.S. at 237-38 & n.27. Petitioner asserts that, because substitute counsel failed to suggest changes to the lineup, counsel was "no more than a physical presence" and failed to meet the *Wade* requirement (Dkt 26 at 12). As the Magistrate Judge noted, however, counsel "was present and viewed the lineup for suggestiveness prior to any witness being allowed to make an identification" (Dkt 25 at 24). Petitioner does not dispute this. Because counsel viewed and approved the lineup, and the lineup itself was not unduly suggestive, Petitioner has failed to show that the use of substitute counsel failed to eliminate the hazards associated with lineup identifications.

With respect to the identification at the preliminary examination, Petitioner argues that the witness's identification was impermissibly suggestive in that it occurred under circumstances in which Petitioner "sat at the defense table, identifiable as the accused" (Dkt 26 at 12). In support of his contention, Petitioner cites *Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005). In *Howard*, however, the issue was whether the witness's identification was impermissibly suggestive when the witness had seen the defendant during two court hearings *prior to* the lineup identification. *Id.* at 465-66. Here, Petitioner's identification at the preliminary examination occurred after the witness had picked Petitioner out of the lineup (Dkt 25 at 3-4). As such, the preliminary examination identification did not give rise to a substantial likelihood of misidentification. *See Neil v. Biggers*, 409 U.S 188, 198 (1972) ("It is the likelihood of misidentification which violates a defendant's right to due process").

Next, Petitioner challenges the Magistrate Judge's finding that even if the lineup and preliminary examination identifications were impermissibly suggestive, "nothing about the two pretrial identifications casts doubt on the reliability of the witness's testimony" (Dkt 25 at 24). Petitioner specifically objects to the Magistrate Judge's finding that "the *Biggers* considerations all weigh in favor of the reliability of [the] identification" (Dkt 26 at 16; Dkt 25 at 25). The Magistrate Judge assessed the factors established by the Supreme Court in *Biggers*, *id.* at 199-200, and properly found that the witness's identification satisfied the *Biggers* test for reliability (Dkt 25 at 25).

While Petitioner objects to several more of the Magistrate Judge's findings, he identifies no factual or legal errors in the Magistrate Judge's analysis. Petitioner argues that: (1) the suspect was only in the store for a total of 47 seconds and, during that time, the witness engaged in a number of activities that directed her attention away from the suspect[9] (Dkt 26 at 13-14); (2) the witness's identification was unreliable because she did not know the robber, she was terrified, and she and the robber were of a different race (Dkt 26 at 14); (3) the description the witness provided to police lacked particularity, demonstrating her lack of attention and rendering her identification inaccurate and unreliable (Dkt 26 at 15); (4) the witness described the suspect as being in his mid-to-late thirties, although Petitioner was forty-eight years old at the time of the robbery (Dkt 26 at 15); and (5) the witness's certainty in her identification was the direct result of the suggestiveness of the lineup and preliminary examination identifications (Dkt 26 at 15-16).

Petitioner's arguments are unpersuasive. The Magistrate Judge reviewed the factual and procedural history of the case and properly concluded that the totality of the circumstances satisfied

---

[9]Petitioner points to evidence that the witness turned around as she got the cigarettes, looked at the cash register to ring up the sale, dropped down when the suspect grabbed her, opened up the register, got a plastic bag, and put the cigarettes in the bag (Dkt 26 at 13-14).

the *Biggers* considerations, *see Biggers*, 409 U.S at 198, and thus supported the reliability of the identification (Dkt 25 at 3-8, 24-25).

Finally, Petitioner asserts his disagreement with the Magistrate Judge's finding that "[b]ecause no basis existed for suppressing the identification, counsel acted reasonably in not moving to suppress" (Dkt 26 at 16-17; Dkt 25 at 25). Because the Court finds that the Magistrate Judge correctly concluded that the identification evidence satisfied the *Biggers* considerations, the Court finds no error in the Magistrate Judge's conclusion that counsel was not ineffective for failing to move to suppress it.

2. *Unreliabiilty of Eyewitness Identifications*

Petitioner next objects to the Magistrate Judge's determination that the trial court did not err in refusing to take judicial notice of, or give requested jury instructions about, the unreliability of eyewitness identification (Dkt 26 at 17-19). Petitioner argues that these refusals denied him his constitutionally protected right to present a meaningful defense (Dkt 26 at 17-18). Petitioner further asserts that the jury instruction given was insufficient because it instructed the jury on judging the credibility of witnesses, and not on the reliability of eyewitness identifications (Dkt 26 at 18-19).

The Magistrate Judge properly noted that "[n]o federal constitutional authority requires that a state court take judicial notice of any matter," and that Petitioner "cannot show that the absence of the requested instruction rendered the trial fundamentally unfair" (Dkt 25 at 26). Petitioner's arguments reveal no errors in the Magistrate Judge's analysis or conclusions with respect to these issues on habeas review, and Petitioner's objection is therefore denied.

### F.  Prosecutorial Misconduct

Petitioner's next objection is related to his claim of prosecutorial misconduct (Dkt 26 at 19;

Dkt 25 at 27). Specifically, Petitioner contends that the Magistrate Judge incorrectly assumed that the pictures Petitioner objected to included a picture of a lineup array and individual pictures of Petitioner taken from the store videotape (Dkt 26 at 19). Petitioner asserts that the pictures the Magistrate Judge addressed were People's Exhibits 4, 6 and 7, while the pictures to which he objected were People's Exhibits 1 and 2 (*id.*).

While the Magistrate Judge noted that Petitioner's basis for relief was unclear (Dkt 25 at 27), Petitioner did argue that "the prosecutor withheld evidence that a *pre-trial* photographic identification had taken place at all" (Dkt 2 at 49) (emphasis added). The Magistrate Judge properly concluded that this argument was based on an unreasonable assumption that there had been a pre-trial photo array (Dkt 25 at 28).

It appears that Petitioner now intends to assert that the in-trial identification was improper because it was based on a previously undisclosed photo. Even if this objection is not waived,[10] it is without merit. The witness's identification of the photograph in court occurred after the witness identified Petitioner in a lineup and identified him at a preliminary examination (*see* Dkt 25 at 3-4). The subsequent identification at trial did not create a substantial likelihood of misidentification. *See Biggers*, 409 U.S at 198. There was, thus, no error in admitting the evidence. Further, there is no evidence that the photos, even if undisclosed to the defense prior to trial, amounted to impermissibly withheld exculpatory evidence. In fact, the evidence indicates that the photographs were not exculpatory at all, but were introduced at trial by the prosecution for the purpose of identifying Petitioner as the perpetrator of the crime (Dkt 14, Tr. I at 159).

---

[10]*See supra*, n.5.

14

### G. Introduction of Other-Acts Evidence

Petitioner's final objection is that the Magistrate Judge erred in denying Petitioner's claim of ineffective assistance of trial counsel based on the admission into evidence of still photos taken from the first robbery (Dkt 26 at 21-23; Dkt 25 at 28-31). Petitioner specifically contends that the Magistrate Judge's "finding that trial counsel had objected to 'essentially the same conduct' in a previous trial" is "not based in fact" (Dkt 26 at 21-22) (quoting Dkt 25 at 31). Petitioner further argues that (1) the still photos were from a different robbery, in which the charges against Petitioner were dismissed; (2) the witness never testified that the person who robbed her had a bald spot; and (3) the prosecution redacted the photos in a way that misled the jury into believing that they were viewing photos from the robbery at issue in the case (Dkt 26 at 22-23). For these reasons, Petitioner contends that the still photos were irrelevant and inadmissible evidence and that trial counsel's failure to object to the use of these photos was unreasonable (Dkt 26 at 23). Finally, Petitioner contends that the Magistrate Judge erred in finding that "the jury was instructed to consider the evidence only as it applied to the question of whether Petitioner had a common scheme or plan …" (Dkt 26 at 23; Dkt 25 at 31).

Petitioner is correct that the photos were taken from a video of a third robbery that was not presented to the jury (Dkt 14 at 180-81), that the source of the photos was not revealed to the jury (*id.*), and that the limiting instruction that was given (Dkt 15 at 217-19) did not pertain to the photos or the video from which the photos were taken (*see* Dkt 14 at 180-81).[11] Rather, the photos from the third robbery were those on which the detective who arrested Petitioner relied for identification

---

[11] To the extent the Report and Recommendation relies on facts and analysis to the contrary, it is rejected.

of Petitioner as the suspect (Dkt 14 at 185). These photos were introduced at the request of Petitioner's trial counsel after the detective had testified that when he saw Petitioner, he thought "oh, my gosh, this is the guy" (Dkt 14 at 175). Petitioner's trial counsel, after weighing the options, made a reasoned decision that he wanted to introduce the photos, but without indicating to the jury that there had been a third armed robbery (Dkt 14 at 181). The trial court asked defense counsel whether he believed "the benefit to [Petitioner] outweigh[ed] whatever small risk there might be that [a juror's] going to" realize that the photos were from the robbery of another station (Dkt 14 at 184). Counsel stated that he was "more comfortable dealing with the photograph than . . . with [the detective's] testimony that hey, that's the guy identified from the photograph" (*id.*).

Under these circumstances, and applying, as is required, a "heavy measure of deference to counsel's judgments," *Strickland*, 466 U.S. at 691, the Court concludes that trial counsel's decision to have the photos admitted was reasonable. Without an opportunity to view the photos themselves, jurors were likely to simply accept the detective's testimony. Counsel's decision thus cannot be said to have been outside of the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if seeking admission of the photos was objectively unreasonable, however, Petitioner has failed to establish that the admission prejudiced him, such that the outcome was unreliable or fundamentally unfair (as discussed previously, given the evidence, including positive eyewitness identification). Petitioner's objection is, therefore, denied.

### H.  Certificate of Appealability

Having determined that Petitioner's objections lack merit, the Court must further determine pursuant to 28 U.S.C. § 2253(c) whether to grant a certificate of appealability as to the issues raised. *See* RULES GOVERNING § 2254 CASES, Rule 11 (requiring the district court to "issue or deny a

certificate of appealability when it enters a final order"). The Court must review the issues individually. *Slack v. McDaniel*, 529 U.S. 473 (2000); *Murphy v. Ohio*, 263 F.3d 466, 466-67 (6th Cir. 2001).

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484. Upon review, this Court finds that reasonable jurists would not find the Court's assessment of any of Petitioner's claims debatable or wrong. A certificate of appealability will therefore be denied..

A Final Order will be entered consistent with this Opinion.


Date: September 26, 2011                             /s/ Janet T. Neff
                                                                             JANET T. NEFF
                                                                             United States District Judge